**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| BERNARD WAITHAKA; on behalf of himself and all others similarly situated, | : : : | CIVIL ACTION NO.: |
| Plaintiff, | : : | |
| v. | : : | |
| AMAZON.COM, INC., AMAZON LOGISTICS, INC., | : : : | |
| Defendant. | : | |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Amazon.com, Inc. and Amazon Logistics, Inc. (together, "Amazon" or "Defendants") hereby remove this action from the Superior Court of the Commonwealth of Massachusetts, Worcester County, to the United States District Court for the District of Massachusetts. This Court has original subject matter jurisdiction over the lawsuit of plaintiff Bernard Waithaka ("Plaintiff") under the Class Action Fairness Act of 2005 ("CAFA") because this matter was brought as a class action, diversity of citizenship exists between one or more members of the putative class and Amazon, the number of proposed class members exceeds 100 individuals, and the amount in controversy exceeds $5 million in the aggregate. Alternatively, an independent basis for subject matter jurisdiction exists under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states, and the amount in controversy as to Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs.

## I.     FACTUAL BACKGROUND

1.     This lawsuit is a civil action within the meaning of the Acts of Congress relating to the removal of class actions. *See* 28 U.S.C. § 1453.

2.      On or about August 28, 2017, Plaintiff Bernard Waithaka ("Plaintiff") commenced this action against Defendants by filing a Complaint in the Worcester County Superior Court for the Commonwealth of Massachusetts, captioned *Bernard Waithaka, on behalf of himself and all others similarly situated v. Amazon.com, Inc. and Amazon Logistics, Inc.*, No. 1785-CV-01403D. A true and correct copy of the Complaint ("Compl.") together with all process filed with the Worcester Superior Court in the state court action is attached as Exhibit A.

3.      The earliest date on which Plaintiff served a copy of the Complaint on either Defendant was September 29, 2017.

4.      Plaintiff purports to bring and maintain this action as a class action under Mass. R. Civ. P. 23 and Mass. Gen. L. c. 149 § 150.  Compl. ¶ 2, p. 5.

5.      Plaintiff seeks to represent and certify the following class: "[I]ndividuals who have worked as delivery drivers for [Defendants] in the Commonwealth of Massachusetts and have been classified as independent contractors."  Compl. ¶ 1.[1]

6.      Plaintiff seeks to recover "all damages due to the Plaintiff and other class members because of their misclassification as independent contractors and related wage law violations," including unpaid wages and unreimbursed business expenses, statutory trebling of damages, attorneys' fees and costs and injunctive relief for claims allegedly arising from Defendants' purported misclassification of putative class members under the Massachusetts Independent Contractor Law, Mass. Gen. L. c. 149 § 148B; Defendants' purported failure to reimburse class members' business expenses under Mass. Gen. L. c. 149 §§ 148, 150; and purported failure to pay class members all wages owed and the Massachusetts minimum wage under Mass. Gen. L. c. 149

---

[1] Defendants do not concede, and reserve the right to contest, *inter alia*, Plaintiff's allegation that this lawsuit may properly proceed as a class action.  Amazon also reserves its right to compel arbitration of Plaintiff's claims.

§ 150 and Mass. Gen. L. c. 151 §§ 1, 7. *See generally* Compl. Therefore, for the purposes of this Notice of Removal, this matter is a class action as that term is defined pursuant to 28 U.S.C. §§ 1332(d)(1)(B) and 1453.

## II.  THE REMOVAL IS TIMELY.

7.  Because this Notice of Removal is filed within 30 days of service of the Summons and Complaint on Defendants, it is timely under 28 U.S.C. § 1446(b) and 1453.

8.  No previous Notice of Removal has been filed or made with this Court.

## III.  THIS COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005.

9.  The Supreme Court recently clarified that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens*, 133 S. Ct. 547, 554 (2014).

10.  This Court has jurisdiction over this matter pursuant to CAFA. *See* 28 U.S.C. §§ 1332(d), 1453. Under CAFA, District Courts have original diversity jurisdiction over a class action whenever: (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant," (28 U.S.C. § 1332(d)(2)(A)); (2) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100 (28 U.S.C. § 1332(d)(5)(B)); and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs" (28 U.S.C. § 1332(d)(2)). All CAFA requirements are satisfied in this case. Further, no exception to the exercise of federal jurisdiction applies. *See, e.g.*, U.S.C. § 1332(d)(4)(A)-(B). Therefore, removal is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

### A.  Diversity of Citizenship Exists.

11.  To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, that one putative class member is a citizen of a state different

3

from that of one defendant.  28 U.S.C. § 1332(d)(2); *Lenahan v. Dick's Sporting Goods, Inc*., No. 10-11832-RGS, 2010 WL 5092254, at *1 (D. Mass. Dec. 8, 2010).

### 1.   *Plaintiff is a citizen of Massachusetts*.

12.     Plaintiff Bernard Waithaka was at the time of the commencement of this action a resident and citizen of the Commonwealth of Massachusetts.  Compl. ¶ 3.

### 2.   *Neither Defendant is a citizen of Massachusetts*.

13.     Defendant Amazon.com, Inc. was at the time of the commencement of this action, and is now, a Delaware corporation, headquartered in Seattle, Washington.  Compl. ¶ 4.

14.     Defendant Amazon Logistics, Inc. was at the time of the commencement of this action, and is now, a Delaware corporation, headquartered in Seattle, Washington.  Compl. ¶ 5.

15.     As a result, Defendants are now, and were at the time of the filing of this action, citizens and/or residents of the State of Washington and Delaware within the meaning of the Acts of Congress relating to the removal of class actions.  *See McCarthy v. Bank of N.Y./Mellon,* No. 10-10486-GAO, 2010 WL 2144241, at *1 (D. Mass. May 27, 2010) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010)).  Thus, Defendants are citizens of Washington and Delaware for diversity purposes under CAFA.  *See* 28 U.S.C. § 1332(d)(10).

16.     Accordingly, there is diversity of citizenship pursuant to CAFA because a member of the putative class "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

### B.    The Proposed Class Consists Of At Least 100 Proposed Class Members

17.     The second jurisdictional requirement under CAFA is that the number of members of all proposed plaintiff classes in the aggregate is more than 100.  *See* 28 U.S.C. § 1332(d)(5)(B).

18.     The Complaint alleges claims on behalf of Plaintiff and a putative class of similarly situated individuals in Massachusetts.  Compl. ¶ 1.

19.     During the Class Period (as defined below), over 100 individuals, including Plaintiff, performed delivery services for Amazon in the Commonwealth of Massachusetts and were classified as independent contractors.  As the number of members of the proposed putative class exceeds 100, the second jurisdictional requirement under CAFA is met.  *See* 28 U.S.C. § 1332(d)(5)(B).

**C.     The Amount In Controversy Requirement Is Satisfied[2]**

20.     As the Supreme Court has held, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554.

21.     CAFA provides for the aggregation of the claims of the individual members in a class action to determine if the amount in controversy exceeds the sum or value of $5 million, exclusive of interests and costs.  *See* 28 U.S.C. § 1332(d)(6).

22.     In addition, Congress intended for federal jurisdiction to attach under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  S. Rep. No. 109-14, *as reprinted in* 2005 WL 627977, at *42 (1st Sess. 2005).

23.     Where, as here, the plaintiff does not expressly plead a specific amount of damages,

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' reference to specific damages amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or the putative class he claims to represent. Defendants specifically deny that Plaintiff has suffered any damage as a result of any act or omission by Defendants. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover these damages based upon the allegations contained in the Complaint or otherwise.

a defendant must only show a reasonable probability that the amount in controversy exceeds \$5 million. *See Sierra v. Progressive Direct Ins. Co.*, No. 12–30020–FDS, 2012 WL 4572923, at \*2 (D. Mass. Sept. 28, 2012). Plaintiff's likelihood of success on the merits is irrelevant to determining the court's jurisdiction because "the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Manson v. GMAC Mortg., LLC*, 602 F. Supp. 2d 289, 293 n.6 (D. Mass. 2009). Because "questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the issue should be resolved without an extensive fact-finding inquiry or 'mini-trial' about the amount in controversy." *Sierra*, 2012 WL 4572923, at \*2 (internal citations omitted). In determining whether the removing defendant has met its burden, courts look first to the plaintiff's complaint and then to the defendant's petition for removal. *Williams v. Am. Honda Fin. Corp.*, No. 14-12859-LTS, 2014 WL 5494914, at \*3 (D. Mass. Oct. 30, 2014).

24.     "In calculating the amount in controversy, a federal court must examine relevant state law to determine the nature and extent of the damages which may be awarded." *Lucas v. Ultima Framingham LLC*, 973 F. Supp. 2d 98, 101 (D. Mass. 2013) (quoting *Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir. 2004)). Thus, where the statute at issue includes both a damage multiplier and the awarding of attorneys' fees, the "court must apply [those] factor[s] in evaluating the amount in controversy." *Id.* (internal citations omitted).

25.     Once the defendant has shown that the amount in controversy is satisfied, the plaintiff can defeat jurisdiction only by demonstrating "to a legal certainty" that the amount recoverable does *not* meet the \$5,000,000 threshold. *See Liu v. Amerco, Inc.,* 677 F.3d 489, 493 (1st Cir. 2012). To overcome this difficult burden, Plaintiff must demonstrate "that the damages never could have exceeded the jurisdictional minimum *such that* the claim was essentially feigned

(colorable) in order to confer jurisdiction." *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995).

26.     Further, CAFA's legislative history makes clear that doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction.  *See, e.g.*, S. Rep. No. 109-14, *as reprinted in* 2005 WL 627977, at *43 (1st Sess. 2005) ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

27.     While Amazon denies Plaintiff's claims and denies that Plaintiff or the putative class members he purports to represent are entitled to the relief for which he has prayed, it is clear that, when the potential values of the claims of Plaintiff and the putative class members are aggregated, the allegations within the Complaint "more likely than not" put into controversy an amount in excess of $5 million.

> **1.     *Information Relevant to Amounts at Issue.***

28.     Plaintiff's Complaint does not define the class period, but the statute of limitations for Plaintiff's claims stemming from his alleged misclassification as an independent contractor is three years.  *See* Mass. Gen. Laws ch. 149, § 150.

29.     Plaintiff filed the Complaint on or around August 28, 2017.  Thus, the class period for present purposes of establishing jurisdiction under CAFA would be August 28, 2014 through the conclusion of this action ("Class Period").

30.     Through October 28, 2017, over 100 putative class members have driven, in the aggregate, well over 1,000,000 miles to deliver packages to Amazon customers.

31.     The 2017 Internal Revenue Service standard mileage rates used to calculate the

deductible costs of operating an automobile for business purposes is $0.535 per mile.  *See* IRS Standard Mileage Rates, http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates (last visited Oct. 27, 2017), attached hereto as Exhibit B.

32.     Through October 28, 2017, the putative class members have performed delivery services for more than 250,000 hours.

33.     Massachusetts' minimum wage has been $11.00 per hour since January 1, 2017. *See* Mass. Gen. Laws ch. 151, § 1. Massachusetts' minimum wage was $10.00 per hour from January 1, 2016 through December 31, 2016. *Id.*

### 2.     *Calculation of Plaintiff's Claimed Damages.*

34.     The Complaint alleges that because Plaintiff and the other putative class members were classified as independent contractors rather than as employees, they have incurred unreimbursed expenses for, among other things, maintaining their vehicles, gas, phone, phone data, and other expenses.  Compl. ¶ 9.

35.     The Complaint alleges that Plaintiff used the applicable IRS reimbursement rate to calculate alleged unreimbursed vehicle expenses.  Compl. ¶ 10.

36.     For purposes of this Notice of Removal only, Amazon's calculations assume that putative class members incurred vehicle expenses based on the IRS reimbursement rate of $0.535 for 2017.[3]  Under this assumption, the total unpaid mileage expenses for the putative class would exceed $789,000 if the mileage during the Class Period is over 1,475,000 miles (1,475,000 miles times $0.535 per mile equals $789,125).  Based on delivery address, the estimated mileage for the putative class exceeds 1,475,000 through October 28, 2017.  When trebled under Mass. Gen. L. c.

---

[3] This is a conservative figure, as some putative class members provided service in 2016, when the IRS was $.54.  *See* Exhibit B.

149, § 150, the amount in controversy with respect to alleged unpaid mileage expenditures significantly **exceeds $2.36 million** ($789,125 trebled totals $2,367,375). *See Lucas*, 973 F. Supp. 2d at 101 (recognizing that Court should include multiple damages in calculating amount in controversy); *see also* Compl. at p. 5 (requesting treble damages).

37.     For purposes of this Notice of Removal only, Amazon's calculations assume that putative class members incurred unreimbursed phone expenses of $50 per month, which is the phone reimbursement amount provided to Amazon's U.S. based-employees during the Class Period.[4]  There are already over 7,500 aggregate work months in the Class Period.  Under this assumption, the amount placed at issue by Plaintiff relating to the putative class members' unpaid phone data expenses exceeds $375,000 (over 7,500 months times $50 per month).  When trebled under Mass. Gen. L. c. 149, § 150, the amount in controversy as to alleged unpaid phone data expenses **exceeds $1.1 million** (over $375,000 trebled totals $1,125,000).

38.     Plaintiff also alleges that Amazon violated the Wage Act, Mass. Gen. L. c. 151, §§ 1,7 by failing to pay Plaintiff and other drivers the minimum wage of $11.00 required under Massachusetts law.  *See* Compl. ¶ 2.  Plaintiff specifically alleges that he earned nearly three dollars less than the minimum wage "after subtracting mileage at the standard IRS reimbursement rate." *Id.* at ¶ 10. [5]

39.     During the Class Period through October 28, 2017, Plaintiff and the putative class have performed delivery services, in the aggregate, for well over 250,000 hours.  Under these assumptions, the amount placed at issue by Plaintiff relating to the putative class members' claims

---

[4] Reference to this policy is for purposes of calculating the amount in controversy only and shall not constitute an admission that the policy applies to Plaintiff or any members of the Class.
[5] Plaintiff's allegations concerning damages related to tips, Compl. ¶ 10, does not change this analysis.  While Amazon is not aware of tips received by Plaintiff, any damages associated with alleged tips would increase the amount in controversy at issue.

for unpaid minimum wage damages exceeds $110,000.  When trebled under Mass. Gen. L. c. 151, § 20, the amount in controversy as to the putative class members' alleged unpaid minimum wage damages **exceeds $330,000**.

40.     Plaintiff also alleges Amazon violated the Wage Act, Mass. Gen. L. c. 151, §§ 1,7 by not paying Plaintiff and the putative class members for all hours worked between the end of their scheduled shifts and their last delivery (*i.e.*, alleged unpaid wages).  *See, e.g.*, Complaint ¶¶ 2, 11 (alleging that "it often takes drivers more time to complete their scheduled shifts, but drivers do not receive additional compensation for this extra time"), ¶ 12 ("Not only is this unpaid time a violation of Massachusetts state law, but this unpaid time also further pushes the drivers' wages below minimum wage.").

41.     During the Class Period through October 28, 2017, the estimated amount of alleged unpaid wages is over $190,000 for Plaintiff and the putative class members based on delivery data. When trebled under Mass. Gen. L. c. 151, § 20, the amount in controversy as to Plaintiff's alleged unpaid wage claims on behalf of the putative class **exceeds $570,000**.   This amount is in addition to the amounts described in Paragraph 39 regarding alleged minimum wage damages.

42.     Thus, the total amount placed in controversy by Plaintiff's claims on behalf of the putative class, *not including attorneys' fees*, exceeds $4,392,375.

### 3.     *Attorneys' Fees in Controversy*

43.     Where the statute provides for the recovery of attorneys' fees, such fees must be considered in calculating the amount in controversy.  *See Lucas*, 973 F. Supp. 2d at 101; *see also* Compl. at p. 5 (requesting attorneys' fees).

44.     Plaintiff's counsel, in a case also brought pursuant to Mass. Gen. L. c. 149, § 150, received thirty-three percent of a court-approved settlement to account for her fees and expenses

(an award totaling $1,666,666). *See* Order Approving Settlement (ECF No. 57), *Crenshaw v. Texas Roadhouse, Inc. et al.*, No. 1:11–cv–10549–JLT (D. Mass. Sept. 6, 2012); Plaintiffs' Assented-to Motion for Final Approval of Class Action Settlement (ECF No. 53-3), *Crenshaw v. Texas Roadhouse, Inc. et al.*, No. 1:11–cv–10549–JLT (D. Mass. Sept. 4, 2012).  It is reasonable to conclude that Plaintiff's counsel will seek a similar recovery in this case. *See* Plaintiff's Assented-to Motion for Final Approval of Class Action Settlement (ECF No. 72), *Sheehan et al. v. RCN Telecom Servs., Inc.*, No. 1:16-cv-10509-DPW (D. Mass. Oct. 20, 2017) (requesting attorneys' fees for Plaintiff's counsel valued at thirty-three percent of class settlement in independent contractor classification litigation). Thirty-three percent in attorneys' fees on top of a potential damages award in excess of $4,392,375 would add at least another $1,449,483 to the amount in controversy.  *See Pazol v. Tough Mudder Inc.,* 819 F.3d 548, 553 (1st Cir. 2016) ("[a]ccepting" plaintiffs' allocation of thirty-three percent in fees).  Even an attorneys' fees award of twenty-five percent would add over $1,098,093 million to the amount in controversy.

### D.    Summary of Amount In Controversy

45.    Based on the categories of damages and calculations outlined above, the amount placed in controversy by the class allegations in Plaintiff's Complaint easily exceeds $5 million, as follows:

| | |
|---|---|
| **Vehicle Expenses** | at least $2,367,375 |
| **Phone Expenses** | at least $1,125,000 |
| **Minimum Wage Damages** | at least $330,000 |
| **Unpaid Wage Damages** | at least $570,000 |
| **Attorneys' Fees (25%)** | at least $1,098,093 |

| **TOTAL**: | at least $**5,490,468** |
|---|---|

46.     If Amazon were to apply less conservative assumptions, the amount at issue would be even greater.  For example, Plaintiff claims his business expenses include paying for his "phone" and "phone data."  Compl. ¶ 9.  The phone expenses calculated above, however, assumes only reimbursement for phone data, not for the costs of the phone itself.  As another example, Plaintiff's alleged mileage during the one week identified in the complaint, *id.* ¶ 10, was over eighty percent greater than his estimated mileage for that week.  If the estimated mileage during the Class Period increased by even twenty-five percent, the damages related to unreimbursed mileage for the putative class would increase by over $561,000.  This would, in turn, result in a correspondingly substantial increase in attorneys' fees.

47.     Assuming the truth of his allegations, Plaintiff was paid the equivalent of approximately $18.00 per hour for each delivery "block" that he provided services.[6]  He claims that in one exemplar week, his alleged expenses reduced his hourly wage to $8.10.  Compl. ¶ 10.  Applying Plaintiff's alleged average hourly expenses to the aggregate hours for the putative class (over 250,000 hours) would result in expense damages alone of over $2,475,000 ($18 minus $8.10, times 250,000).  Trebled, this amount is over **$7,425,000.**

48.     The amounts in the table above are also very conservative figures because they only

---

[6] Amazon pays Service Fees per block that vary depending on circumstances, including geography and whether "surge" pricing is in effect because of weather or special events increasing demand. Amazon generally pays Service Fees per block that roughly equate to a rate of between $18 and $25 per hour, multiplied accordingly by the anticipated duration of block (*e.g.*, a "two-hour" block would receive at least $36).  Delivery blocks run as short as one hour and may exceed four hours. In the event Plaintiff completed a "block" of deliveries in less time than estimated, he would still be paid for the full block.  Although Amazon believes a block generally is longer than necessary to perform delivery services, Amazon does not track "hours worked" and is using delivery blocks to estimate hours.

reflect the amount in controversy through October 28, 2017.  They do not account for future amounts that would continue to accrue over the lifespan of this large class action litigation. "Though the amount in controversy in a case removed to federal court depends on the circumstances existing at the time of removal . . . the calculation includes monies not yet due the plaintiff at that point—so long as the 'judgment will clearly and finally create an obligation to pay, over a number of years, a sum in excess of the jurisdictional amount, even though future events may alter or cut off the defendant's obligation.'" *Williams v. Toys "R" Us – Delaware, Inc.*, No. CV 15-13943-MLW, 2016 WL 5723588, at *2 (D. Mass. Sept. 28, 2016) (quoting 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice & Procedure § 3702, at 87 (3d ed. 1998)) (citations omitted).  Here, each of the categories of monetary damages alleged in the Complaint would run through the date of a final judgment in Plaintiff's favor.  *See Costello v. Whole Foods Mkt. Grp., Inc.*, No. 16-10673-GAO (D. Mass. 2016) (ECF. No. 34) ("[T]he amount in controversy includes all back pay due . . . through the date of final judgment.").

49.     According to the official U.S. District Courts Federal Court Management Statistics (June 30, 2017), the median length of time for a civil action filed in this Court from filing to disposition is 16.8 months; the media length of time from filing to trial is 30.1 months.   Applying the same assumptions underlying the amounts reflected in Paragraph 45 above, projecting the current amount in controversy forward only six months yields an estimated amount in controversy of **over $9,900,000**.

50.     Although Amazon expressly denies Plaintiff's allegations and theories of recovery, and expressly denies that Plaintiff or the putative class he purports to represent are entitled to any of the requested relief, the amount in controversy clearly exceeds the $5 million threshold set forth under 28 U.S.C. § 1332(d)(2).

### E.    No Exceptions to CAFA Jurisdiction Apply.

51.    CAFA provides for two primary exceptions to the exercise of federal jurisdiction, the so-called "home-state" and "local controversy" exceptions.  *See* 28 U.S.C. § 1332(d)(3)(A)-(B). *Plaintiff* bears the burden of proof as to the applicability of these exceptions.  *McMorris v. TJX Cos*., 493 F. Supp. 2d 158, 165 (D. Mass. 2007); *cf.* S. Rep. No. 109-14, *as reprinted in* 2005 WL 627977, at *42 (1st Sess. 2005) (exceptions to CAFA jurisdiction should be interpreted narrowly and doubts should be resolved "in favor of exercising jurisdiction over the matter").  Plaintiff cannot meet his burden of proving that either exception applies because neither Defendant is a citizen of Massachusetts.

## IV.    <u>REMOVAL IS ALSO PROPER PURSUANT TO 28 U.S.C. § 1332</u>

52.    The Court also has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states, and the amount in controversy as to Plaintiff's individual claims exceeds $75,000, exclusive of interest and costs.

### A.    Diversity of Citizenship Exists

53.    "For purposes of diversity, a person is a citizen of the state in which he is domiciled."  *Padilla-Mangual v. Pavia Hosp*., 516 F.3d 29 (1st Cir. 2008).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed in state court.  *See Hall v. Curran,* 599 F.3d 70, 72 (1st Cir. 2010) ("Domicile is determined at the time the suit is filed.").

54.    Plaintiff was at the time of the commencement of this action a resident and citizen of the Commonwealth of Massachusetts.  Compl. ¶ 3.

55.    Defendant Amazon.com, Inc. was at the time of the commencement of this action, and is now, a Delaware corporation, headquartered in Seattle, Washington.  Compl. ¶ 4.

56.    Defendant Amazon Logistics, Inc. was at the time of the commencement of this

action, and is now, a Delaware corporation, headquartered in Seattle, Washington.  Compl ¶ 5.

57.    As a result, and for the purpose of 28 U.S.C. § 1332(a), there is complete diversity of citizenship between the parties.  28 U.S.C. § 1332(c)(1).

### B.    The Amount-In-Controversy Requirement is Satisfied.

58.    Where, as here, Plaintiff does not expressly plead a specific amount of damages in his complaint, a defendant must only show a reasonable probability that the amount in controversy exceeds $75,000.  *See Amoche v. Guarantee Trust Life Ins. Co*., 556 F.3d 41, 43 (1st Cir. 2009); *Huston v. FLS Language Ctrs.*, 18 F. Supp. 3d 17, 20-21 (D. Mass. 2014) (applying Amoche "reasonable probability" standard to diversity jurisdiction case). "[T]he reasonable probability standard is . . . for all practical purposes identical to the preponderance standard adopted by several circuits." *Amoche*, 556 F.3d at 50.

59.    Plaintiff's likelihood of success on the merits is irrelevant to the question of the Court's jurisdiction; "the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *Manson*, 602 F. Supp. 2d at 293 n. 6.  While Defendants deny Plaintiff's claims and deny that Plaintiff or the putative class he purports to represent are entitled to the relief for which he has prayed, it is clear that Plaintiff "more likely than not" has put into controversy an amount in excess of $75,000.

60.    Plaintiff is estimated to have driven over 6,900 miles between January 14, 2017, the date of his first delivery, and October 3, 2017.  Based on the applicable IRS reimbursement rate of $0.535 during this period, the amount placed at issue by Plaintiff as to his alleged unpaid mileage expenses is over $3,691 (6,900 miles times $0.535 per mile).  When trebled under Mass. Gen. L. c. 149, § 150, the amount in controversy with respect to Plaintiff's alleged unpaid mileage expenditures is approximately **$11,074**.

61.     Plaintiff alleges that his damages include unreimbursed expenses related to his phone and phone data. *See* Compl. ¶ 9.  As noted, during the Class Period Amazon reimbursed its U.S. based-employees at a rate of $50 per month for work-related phone expenses.  Using this $50 per month amount, the amount placed at issue by Plaintiff's claims for unpaid phone data is $500 (ten months times $50).  When trebled under Mass. Gen. L. c. 149, § 150, the amount in controversy as to Plaintiff's alleged unpaid phone data expenses for the period January through October 28, 2017 is **$1,500**.

62.     Plaintiff also alleges that Amazon violated the Wage Act, Mass. Gen. L. c. 151, §§ 1,7 by failing to pay Plaintiff the minimum wage of $11.00 required under Massachusetts law in 2017.  *See* Compl. ¶ 2.   By way of example, Plaintiff alleges that his weekly wage fell below the current Massachusetts minimum wage of $11.00 during the week of April 9-15, 2017, after accounting for fuel and vehicle maintenance.  Compl. ¶ 10.  Specifically, Plaintiff estimates that he made $8.10 per hour that week after subtracting mileage at the standard IRS reimbursement rate.  *Id.*  Using Plaintiff's estimate and the applicable Massachusetts minimum wage of $11.00, Plaintiff alleges that he was underpaid by $2.90 per hour.

63.     Accepting his theory, Plaintiff performed delivery services an estimated total of 723 hours between January 14, 2017, the date of Plaintiff's first delivery, and October 3, 2017. Thus, the amount of alleged unpaid minimum wages that Plaintiff has put at issue is approximately $2,096.  Because Plaintiff seeks treble damages under Mass. Gen. L. c. 151, § 20, Plaintiff has placed **at least $6,290** in controversy in unpaid minimum wage damages.

### C.     Attorney's Fees in Controversy

64.     This Court must also consider the amount of attorney's fees in controversy in determining whether the jurisdictional amounts for removal are satisfied where, as here, attorney's

fees are authorized by the statute under which the plaintiff seeks to recover. *See, e.g., Lucas*, 973 F. Supp. 2d at 101; *Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156, 159-64 (D. Me. 2007) (future statutory attorney's fees should be considered).

65.     Mass. Gen. L. c. 149, § 150 expressly provides for an award of attorneys' fees to a prevailing plaintiff under the Massachusetts Wage Act ("An employee so aggrieved who prevails . . . shall also be awarded . . . reasonable attorneys' fees.").  An award of attorney's fees to the prevailing party is mandatory under Mass. Gen. L. c. 149, § 150, and even a modest award of compensatory damages entitles a prevailing party to his/her legal fees. *See Duct & Vent Cleaning of Am. v. Houten*, No. 961569, 12 Mass. L. Rptr. 209, 2000 WL 1473507 at * 4 (Mass. Super. Ct. May 30, 2000) (a prevailing plaintiff is entitled by law to attorney's fees under the Wage Act). Mass. Gen. L. c. 151, § 20 contains a similar provision that provides for an award of attorney's fees to a prevailing plaintiff.

66.     In assessing the amount of attorneys' fees in controversy, the Court may consider state and federal cases awarding such fees. *See Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir. 2004) ("Taking notice of amounts recovered by plaintiffs in similar cases in a similar locality is but one way to assess whether a plaintiff can recover the jurisdictional amount."); *Huston*, 18 F. Supp. 3d at 24 (considering awards of attorney's fees in similar Massachusetts Wage Act cases to assess the amount of attorney's fees in controversy for diversity requirements in removal).

67.     The attorneys' fees awarded to Plaintiff's counsel in a recent action under the Wage Act provide a reasonable estimate of fees that Plaintiff's counsel would be expected to seek here as to Plaintiff's individual claims.  In *Travers v. Flight Servs. & Sys., Inc.,* 808 F.3d 525, 531, 552 (1st Cir. 2015), the First Circuit affirmed an award of $176,185 attorneys' fees (and costs of

$7,398.45) awarded by this Court under Mass. Gen. L. c. 149, § 150 to Plaintiff's counsel. *Id.* *Travers* was a "heavily litigated" single-plaintiff action under the Wage Act. *Id.* Of the total fee award of $176,185, the time spent on the matter by a single attorney accounted for $86,400 based on an hourly rate of $600 per hour and 144 awarded hours. *Id.* *See also Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 222 (D. Mass. 2004) (awarding $65,374.23 in attorneys' fees on single-plaintiff Wage Act claim).

68.     This case is just one of several similar actions Plaintiff's counsel has filed on behalf of Amazon drivers pending in courts across the country. *See, e.g. Rittmann, et al. v. Amazon.com, Inc., et al.*, No. 2:16-cv-01554-JCC (W.D. Wa. Oct. 4, 2016); *Mack v. Amazon.com, Inc. et al.*, No. 2:17-cv-02515 (C.D. Cal. July 26, 2017). Amazon is represented by the undersigned defense counsel in each of those actions. As is expected here, those lawsuits have been heavily litigated even prior to discovery. For example, in the *Rittmann* action, which has not entered the discovery phase, Amazon has already filed a successful motion to stay and separately filed a motion to dismiss and compel arbitration. *See Rittmann*, Dkt, Nos. 36, 71. In *Rittmann*, Plaintiff's counsel also amended the complaint following Amazon's successful motion to dismiss and filed a motion for reconsideration of the Court's decision to grant Amazon's motion to stay. *See Rittmann*, Dkt. 78-1; *see also Richard C. Young & Co., Ltd. v. Leventhal*, 298 F. Supp. 2d 160, 172 (D. Mass. 2003), *vacated and remanded on other grounds*, 389 F.3d 1 (1st Cir. 2004) (adding $30,000 to the amount in controversy for anticipated arbitration costs).

69.     Like *Travers*, it is reasonable to expect the Plaintiff's individual claims will be "heavily litigated" by the parties. In light of recent experience in similar matters and the hours submitted by Plaintiff's counsel in *Travers*, an estimate of 120 to 150 hours by Plaintiff's counsel here as to Plaintiff's individual claims would be on the conservative side. Using an hourly rate of

$600 and assuming 120 awarded hours, the estimated attorneys' fees for Plaintiff's counsel are $72,000. *See Coast To Coast Eng'g Servs. Inc v. Roop*, No. 2:16-CV-00054-DBH, 2016 WL 6902119, at *2 (D. Me. Nov. 23, 2016) ("Given the contentious history of this litigation, with which the court is familiar, it is not unreasonable to expect that the plaintiff's attorney fees will exceed $75,000 by the time the case is put to rest.").

### D. Summary of Amount in Controversy

70.    Based on the categories of damages and calculations outlined above, the amount placed in controversy by the allegations in Plaintiff's Complaint exceeds $75,000 as to Plaintiff's individual claims, as follows:

| | |
|---|---|
| **Vehicle Expenses** | at least $11,074 |
| **Phone Expenses** | $1,500 |
| **Minimum Wage Damages** | at least $6,290 |
| **Attorneys' Fees** | $72,000 |
| **TOTAL:** | at least $**90,864** |

71.    As with the putative class members, Plaintiff's estimated amount in controversy is a conservative figure. The amount in Paragraph 70, for example, does not account for damages related to alleged unpaid wages. The estimated amount in controversy related to Plaintiff's alleged expenses also is likely low based on the allegations in the Complaint. He claims that in one exemplar week, his expenses reduced his hourly wage to $8.10. Based on the total number of hours that Plaintiff performed delivery services (723 hours), his alleged expense damages would be approximately $7,158 ($18/hour minus $8.10, times 723). Trebled, this amount is approximately **$21,473.** Taking into account Plaintiff's future damages would also increase significantly the value of Plaintiff's individual claim.

## V.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

72.    As set forth above, this Notice of Removal is filed within thirty days of Defendants' receipt of the Complaint.  *See* 28 U.S.C. § 1446(b).

73.    As Plaintiff originally filed this action in the Worcester County Superior Court of Massachusetts, removal to the United States District Court, District of Massachusetts, is proper under 28 U.S.C. § 1441(a).

74.    As required by 28 U.S.C. § 1446(d), Defendants will provide notice of this removal to Plaintiff through his attorneys of record.

75.    As required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed with the Clerk of the Court for the Worcester County Superior Court of Massachusetts.

76.    Defendants have sought no similar relief.

77.    If any questions arise as to the propriety of the removal of this action, Defendants request the opportunity to present a brief in support of its position that this case is removable and that CAFA's limited exceptions to federal jurisdiction are inapplicable.

WHEREFORE, Defendants Amazon.com, Inc. and Amazon Logistics, Inc., desiring to remove this case to the United States District Court for the District of Massachusetts, prays that the filing of this Notice of Removal shall effect the removal of this action to this Court.

Respectfully submitted,

**AMAZON.COM, INC. and
AMAZON LOGISTICS, INC.,**
By their attorneys,

/s/ *Elizabeth M. Bresnahan*
Douglas T. Schwarz, BBO# 548558
 douglas.schwarz@morganlewis.com
Elizabeth M. Bresnahan, BBO# 672577
 elizabeth.bresnahan@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110
Tel. (617) 951-8000

Dated:  October 29, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2017, the foregoing document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). A paper copy will be served by first class mail to:

Shannon Liss-Riordan, Esq.
Adelaide Pagano, Esq.
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994-5800

*s/ Elizabeth M. Bresnahan*
Elizabeth M. Bresnahan